**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **23-mj-263 (MAU)** |
| | : | |
| **DEANGELO MCNEIL,** | : | |
| | : | |
| **Defendant.** | : | |

<u>**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION**</u>

The United States respectfully submits this memorandum in support of its oral motion for detention pending trial under 18 U.S.C. § 3142(f)(1)(E) (felony involving possession of a firearm). The defendant is charged at this time under 18 U.S.C. § 922(g) and not § 924(c) or 21 U.S.C. § 841(a)(1), while the large quantity of suspected Cocaine and Fentanyl recovered from his person undergoes further analysis. Nevertheless, the Court can and should apply the statutory presumption of detention under 18 U.S.C. § 3142(e)(3)(B) based on the evidence of firearm possession in furtherance of drug trafficking under § 924(c). *See United States v. Lee*, 206 F. Supp. 3d 103, 110-111 (D.D.C. 2016) (applying presumption under 924(c) despite absence of such a charge); *see United States v. Bess*, 678 F. Supp. 929, 931-32 (D.D.C. 1988) (adopting the reasoning of the magistrate judge "that there was probable cause to believe that the Defendant committed an offense under 18 U.S.C. § 924(c), and rul[ing] that this was sufficient to trigger the statutory presumption, even though Defendant had not been formally charged with violating 18 U.S.C. § 924(c)").

Even if the Court declines to apply the presumption, this case presents what former Chief Judge Howell called "the trifecta of circumstances" where a "determination of pretrial release is an outlier, not the norm," namely a current charge involving possession of a loaded firearm, second-degree burglary and drug/firearms convictions, and the instant offense that occurred while

the defendant was on pre-trial supervised release.[1] *United States v. Blackson*, No. 23-cr-25 (BAH), 2023 U.S. Dist. LEXIS 18988, at *35 (D.D.C. Feb. 6, 2023) (citing *United States v. Simpkins*, 826 F.2d 94, 97 (D.C. Cir. 1987)). The evidence presented to the Court shows that the defendant poses a demonstrated danger to the public if he were released. As described below, all four statutory factors in § 3142(g) strongly favor pretrial detention.

## I.   Factual and Procedural History

### Gun Incident on September 10, 2023

On Sunday, September 10, 2023, at approximately 1:04 AM, members of the Fifth District Crime Suppression Team ("CST") were working the evening tour of duty, operating marked police vehicles, and wearing full police uniforms with Body Worn Cameras ("BWC"). Officer Anderson was watching live video camera footage of a parking lot in the rear of an apartment building, located at 1901 I Street, Northeast, Washington, D.C. 20002. As Officer Anderson watched the camera footage, he saw an individual, who was wearing a grey jacket and black pants, pull out an object that Officer Anderson recognized as the slide of a semi-automatic pistol. Officer Anderson then saw the individual extend his left arm and point the pistol in front of himself. This individual then lifted his jacket and placed the pistol in his front right waistband area.

Officer Anderson and other CST members then traveled to the rear of the apartment building and exited their vehicle so that they could enter the fenced-in rear parking lot in the back of the apartment building. As officers entered, they observed multiple individuals running through the rear door of the location, and some scaling the side fence. As people ran from the building,

---

[1] The defendant is currently on pre-trial release in 2022 CF2 000841, where he is accused of violating a number of D.C. code firearm offenses, including Unlawful Possession of a Firearm (Prior Conviction) and Carrying a Pistol without a License (CPWL).

Officer Anderson saw DeAngelo McNeil ("hereinafter MCNEIL"), someone he knew from numerous previous law enforcement encounters and arrests, attempt to scale the fence that was to the left of the apartment building. However, MCNEIL fell back and landed in the exterior stairwell landing of 1901 I Street.

MCNEIL then fled through the rear parking lot of 1901 I St NE, over a fence into the rear of 1907 I St NE which was under construction and void of any interior walls or floors. At the bottom of 1907 I St NE, MCNEIL made his way to the base of a ladder which led to the front door of the location. MCNEIL climbed the ladder, and then opened and exited through the front door. Officer Anderson circled back to the rear of 1901 I St NE and saw MCNEIL in the hallway, entering the building's interior stairwell. Officer Anderson located MCNEIL inside and detained him. Officer Anderson noted that MCNEIL was wearing a black hooded sweatshirt with white lettering in the front, blue jeans with rips and tears on the front and brown/tan shoes.

After being initially detained, officers patted down MCNEIL, did not find anything on his person and ultimately released him. Officer Anderson later reviewed the video camera footage and saw that just before officers arrived on scene at approximately 1:15:42 AM, an individual wearing a black hooded sweatshirt with white lettering on the front, a baseball hat and blue jeans stood up from a set of stairs in the rear of 1901 I St NE. This individual, whose physical build and clothing were similar to MCNEIL's when Officer Anderson initially encountered him, walked over to a nearby trash can with an orange lid and briefly lifted the orange lid. The individual then turned around and ran towards the side of 1901 I St NE.

Officers returned to the rear of 1901 I St NE, looked inside the trash can with an orange lid and found a black Glock model 27 .40 caliber semi-automatic pistol bearing serial number

RZD599. The pistol had one (1) round of ammunition in the chamber and a magazine that contained twelve (12) rounds of .40 caliber ammunition. The magazine had a maximum capacity of fifteen (15) rounds. The weapon appeared fully functional, designed to expel a projectile by the action of an explosion, capable of being fired by a single hand and had a barrel length less than twelve inches.



*Figure 1-Photo of gun found inside trash can*

**Arrest on September 21, 2023**

On Thursday, September 21, 2023, at approximately 5:53 PM, members of the Fifth District CST saw MCNEIL near 1919 I Street, Northeast, Washington, D.C. 20002. MCNEIL was then arrested for Unlawful Possession of a Firearm (Prior Conviction) and other firearms related charges in reference to the event on September 10, 2023.

During the defendant's arrest, Officer Amengual recovered a set of vehicle keys from MCNEIL's left hand. In addition, the following items were found during a search incident to MCNEIL's arrest:

- Left hoodie pocket:
  - A Certificate of Title issued by the state of Louisiana for a blue Honda Accord bearing VIN with the last four digits of: 3539

- Front right pants pocket:
  - MCNEIL's Washington, D.C. government issued ID
  - A clear twist from his front right pants pocket containing
    - (12) blue zips containing white rock like substance
    - (26) clear zips containing white rock like substance
    - yellow zip containing white rock like substance
    - (6) plastic twists each containing white rock like substance.

- Front left pants pocket:
  - $545.25 in U.S. currency
  - Digital scale with white powder residue



*Figure 2 - Photo of Officer Amengual retrieving MCNEIL's ID and drugs from defendant's right pocket*

The total weight of the white rock like substance including packaging weighed approximately 19.5 grams. A small portion of the substance was field-tested by Officer Amengual. The field test yielded a positive color reaction for the presence of Cocaine base and Fentanyl.[2] The quantity of narcotics, the packaging, the presence of the money, and the digital scale is consistent with distribution and not mere possession.

---

[2] On September 28, 2023, TFO Charles Vancampen, conducted another field test using a more advanced test on one of the blue zips recovered from McNEIL's person that contained a rock-like substance. The rock-like substance field-tested positive for the presence of cocaine base.



*Figure 3 - Photo of white rock like substance recovered from MCNEIL's person*



*Figure 4 - Photo of digital scale with white residue recovered from MCNEIL's person*

During a search for MCNEIL's car, officers located a blue Honda Accord bearing Virginia

license plates USH1721 and VIN with the last four digits of 3539. The vehicle was parked in front

of 2017 I Street, NE, approximately half a block away from where officers arrested MCNEIL. According to Google maps, MCNEIL's car was located a one-minute walk from where he was arrested. The VIN of the located vehicle matched the VIN referenced in the Title found on MCNEIL's person. Additionally, the keys recovered from MCNEIL's hand unlocked the vehicle.



*Figure 5 – Map showing walking distance between MCNEIL's arrest and his car's location.*

Based on the proximity of the vehicle to MCNEIL and the substances seized from his person during a search incident to his arrest, there was probable cause to believe that there was additional evidence of Possession with the Intent to Distribute a Controlled Substance inside the vehicle. Officers have learned from previous experience that people who possess and sell narcotics often use vehicles parked close by to stash the substances, money, and/or weapons.

Officers conducted a probable cause search of the vehicle and located $4,960 in U.S. currency and a Glock model 30 .45 caliber semi-automatic pistol bearing serial number BUFT395 inside the glovebox, which was locked. The pistol was loaded with one (1) round in the chamber and twelve (12) rounds of ammunition in the magazine, which had a maximum capacity of thirteen (13) rounds. The weapon appeared fully functional, designed to expel a projectile by the action of an explosion, capable of being fired by a single hand and had a barrel length less than twelve inches.



*Figure 6 - Photo of gun and money in glovebox of MCNEIL's vehicle*

There are no firearms or ammunition manufacturers in Washington, D.C. Therefore, the Glock model 27 .40 caliber semi-automatic pistol and thirteen rounds of ammunition recovered on September 10 and the Glock model 30 .45 caliber semi-automatic pistol, and the thirteen rounds of ammunition officers recovered on September 21 must have traveled across state lines.

Officers took photographs of the paperwork that was inside the locked glovebox. Inside, along with a pistol, they found a State Farm Insurance identification card stating that DeAngelo W. McNeil was the insured party. The insurance for the 2016 Honda Accord "Touring" 2D VIN

with the last four digits of 3539 went into effect on September 20, 2023, and expired April 4, 2024.



*Figure 7 - Photo of MCNEIL's insurance identity card located in locked glovebox*

Officers also found a completed handwritten D.C. "Certificate of Title/Temporary Registration and Tag Application" form that contained MCNEIL's name, date of birth, driver license number, address, VIN#, insurance policy name, number, and effective date. The form was signed at the bottom with a signature that appeared to be the defendant's signature.



*Figure 8 – Photo of D.C. "Certificate of Title/Temporary Registration and Tag Application" form*

A search of MCNEIL's criminal history showed that he had been previously convicted of a number of felonies: (1) Unlawful Possession of a Firearm (Prior Conviction) and Possession with Intent to Distribute a Controlled Substance (Cocaine) in D.C. Superior Court Case 2017 CF2 016998; and (2) Second Degree Burglary, Theft, and Conspiracy to Commit Second Degree Burglary in Charles County, Maryland case 08K04000677. In the Maryland case, he was sentenced to ten years of incarceration, and as such was aware of the fact that he had been previously convicted of a crime punishable by more than a year. These convictions made MCNEIL

ineligible to have a concealed pistol carry permit in the District of Columbia. Based on the above-referenced evidence, MCNEIL was charged with Unlawful Possession of a Firearm (Prior Conviction).

On September 28, 2023, at the defendant's initial appearance, the government orally moved for detention pending trial pursuant to the above-referenced provision of the federal bail statute, and any additional provisions that may apply upon review of the Pretrial Services Agency report ("PSR"). A detention and preliminary hearing were set for October 4, 2023, at 12:30 PM.

## II. Legal Authority and Argument

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

### 1. The United States' States Bases for Detention

The United States seeks detention pursuant to § 3142(f)(1)(E), because the defendant is charged with a firearm offense. As an initial matter, the Court should impose the presumption of

pretrial detention under § 3142(e)(3)(B) because there is more than probable cause to believe the defendant committed an offense under § 924(c). The Bail Reform Act creates a rebuttable presumption "that no condition or combination of conditions will reasonably assure the…safety of the community if the judicial officer finds that there is probable cause to believe that the [defendant] committed…an offense under section 924(c)." § 3142(e)(3)(B).

The distribution quantity of white substance recovered from the defendant field tested positive for Cocaine base and Fentanyl. The government expects to charge the defendant under § 924(c) given the additional analysis by a more advanced field test, which confirmed the initial field test regarding the presence of Cocaine base. At this stage, however, the absence of such a charge in no way prevents the Court from applying the presumption:

> [T]he facts found by the judicial officer at the detention hearing determine whether the statutory presumption is implicated;…the complaint need not allege a violation of one of the particular predicate offenses for the presumption to come into play.  If the facts establish probable cause that the defendant has violated 18 U.S.C. § 924(c), the judicial officer should give proper weight to Congress's general factual view that the defendant poses an unreasonable risk of danger to the community.

*Lee*, 206 F. Supp. 3d at 110 (citing *Bess*, 678 F. Supp at 934). On this record, the Court can and should find probable cause that the defendant violated § 924(c) based on the below evidence of drug distribution on September 21, coupled with the loaded firearm recovered from the defendant's car on that date.

Even if the Court declines to apply the presumption, a review and understanding of the facts and circumstances in this case require the Court to conclude that there are no conditions or combination of conditions that would assure the safety of the community. *See* 18 U.S.C. § 3142(e)(1). All four § 3142(g) factors favor detention pending trial, including: (1) the nature and

circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his

history and characteristics; and (4) the nature and seriousness of the danger to any person or the

community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

A.   **Nature and Circumstances of the Offenses Charged**

The nature of MCNEIL's conduct is serious and weighs heavily in favor of pretrial

detention in this case. The defendant is charged with possessing a loaded semi-automatic handgun

under § 922(g)—a serious crime carrying up to 15 years in prison under § 924(a)(8). The evidence

is clear that on September 21, the defendant possessed the firearm during a drug trafficking crime.

Setting aside the drug trafficking, this Court has warned against discounting the danger associated

with possessing these sorts of weapons. *See Blackson*, 2023 U.S. Dist. LEXIS 18988, at *21-22

(the absence of evidence of "use" "does little to detract from" the danger posed by loaded

firearms). MCNEIL kept this firearm loaded, with an extended magazine, and a round in the

chamber. *See United States v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020), *aff'd* (Nov. 5, 2020)

(finding that a defendant should be detained pretrial in part because "the firearm recovered from

the Defendant's person had a round already chambered, making the circumstances even more

troubling.")

Moreover, at the time of his arrest, the defendant was on pre-trial release in D.C. Superior

Court case 2022 CF2 000841 for firearm related charges that stem from facts mirroring those in

this case. According to the police paperwork in that case, officers found Mr. McNeil sitting inside

of a vehicle with a firearm loaded with sixteen rounds of ammunition (including one in the

chamber) inside his waistband. In addition, police located drug paraphernalia, including two digital

scales, a razor, and white rock like substance field testing positive for Cocaine base inside the car.

A second arrest for firearms related offenses, while the defendant is on pre-trial supervised release on gun related charges, "mak[es] evident [the defendant's] disregard of the law forbidding possession of a firearm and automatically rais[es] concern about whether he can be trusted to comply with any conditions of pretrial release." *Id.* at *23-24.

And MCNEIL did not just possess a firearm in isolation, he did so while in possession of narcotics and drug distribution paraphernalia. This Court has repeatedly recognized the dangerousness associated with carrying a firearm in connection with drug distribution. *See, e.g.*, *United States v. Carr*, 2022 WL 13947798 (D.D.C.), 4 (slip copy) (finding the first factor weighed in favor of detention given "the combination of drug distribution *and* the illegal possession of (multiple) guns presents a serious danger to the community."); *United States v. Taylor*, 289 F. Supp. 3d 55, 71 (D.D.C. 2018) ("[A]lthough the mere fact that the defendant possessed a firearm does not constitute evidence of a danger to the community, possession of a firearm by a convicted felon who is allegedly engaged in illegal drug distribution is a different matter.") As such, the nature and circumstances of these offenses weigh heavily in favor of detention.

### B.    Weight of the Evidence against the Defendant

The second factor, the weight of the evidence, strongly favors detention. First, police officers removed 19.5 grams of a white rock-like substance that field-tested positive for Cocaine and Fentanyl directly from MCNEIL's pockets; the retrieval of which was captured on BWC. It should be noted that the suspected narcotics pulled from MCNEIL's pockets were individually wrapped in 45 plastic zips. The manner in which the drugs were individually wrapped and packaged is evidence that the defendant intended to distribute the drugs to scores of individual buyers. In addition to pulling suspected drugs out of the defendant's pocket, Officer Amengual

also recovered the defendant's government issued ID from the same pocket. Finally, officers recovered nearly $550 in small denominations and a digital scale with white powder residue from the defendant's left pocket. Ultimately, large quantities of individually wrapped drugs, small dollar denominated currency, and a small compact digital scale – when taken in total – is evidence that the drugs found in the defendant's pockets were not for personal use, but rather for distribution.

Moreover, the evidence that the loaded pistol found in the blue Honda Accord and was possessed by the defendant is equally strong. First, after the defendant was detained, Officer Amengual recovered keys during his search incident to the defendant's arrest for a blue Honda Accord with a VIN with the last four digits of 3539. Second, officers used those keys to not only open the Honda, but also to open the locked glovebox where a loaded pistol was recovered. Third, when officers searched the defendant, they recovered from the defendant's left hoodie pocket, a Louisiana Certificate of Title for that same vehicle. Finally, officers found a loaded pistol inside of the car's locked glovebox along with an insurance identification card with the defendant's name on it as well as a completed D.C. Certificate of Title/Temporary Registration and Tag Application form that appeared to have the defendant's signature on it. The fact that the defendant had keys that opened the locked glovebox where the pistol was recovered is evidence that the defendant possessed the pistol when he put the gun inside of the glovebox and then locked it.

All told, the evidence is not just strong, but overwhelming and as this Court noted, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 U.S. Dist. LEXIS 18988,

at *29-30. Similarly, here the weight of the evidence increases the prospects that the defendant

will present a danger to the community.[3] This factor weighs in favor of detention.

### C.   The Defendant's History and Characteristics

#### 1.   Criminal History

The third factor—the history and characteristics of the defendant—heavily favors detention

as the defendant has a long history of drugs/firearms offenses as well as other serious crimes. On

April 12, 2005, the defendant was convicted in Charles County, Maryland in case number

08K04000677 of burglary charges after his actions contributed to the death of two people.[4] In that

case, the defendant, along with five other people, broke into a residential garage and tried to steal

a four-wheeler and an off-road motorcycle. When passers-by saw the group, they fled in two

vehicles: a white van occupied by Alton Peele-Howard and Anthony Wade and a purple mini-van

occupied by the defendant and the others. While fleeing, the white van driven by Peele-Howard

struck an SUV, killing Cynthia Chester, age 50, and the defendant's co-conspirator, Wade, the

passenger in the van. The defendant, along with the people he rode with in the purple mini-van,

stole a Toyota Camry, after the van that they initially fled in struck an embankment and was

---

[3] While some judges in this Court have indicated that this factor should be given less weight, in *United States v. Blackson*, following a thorough review of the text of section 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 U.S. Dist. LEXIS 18988, at *29-30.  Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.*  In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023).  The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

[4] The government's proffer relies on a news article that covered the defendant's case. *See* Suspect Sought In 2004 Burglary-Homicide Apprehended, *Southern Maryland Online* (August 11, 2005); http://somd.com/news/headlines/2005/2445.php. The government is awaiting official court documentation regarding this case.

disabled. That car crashed as well, and the defendants fled. Ultimately, the defendant was captured and pled guilty to Second-Degree Burglary, to which he was sentenced to 10 years' imprisonment and Conspiracy to Commit Second-Degree Burglary, and Theft, to which he was sentenced to 15 years' imprisonment, fully suspended.

After being released for committing such reckless and dangerous actions, the defendant started committing drug and firearm offenses – for which he has many. In May 2018, the defendant was convicted in 2017 CF2 016998 of drug and firearms offenses. In that case, the defendant was arrested for suspicion of operating a vehicle while intoxicated. During the search of his car, officers found four grams of a white rock-like substance that field-tested positive for Cocaine, four bags that contained multiple empty zips, and a semi-automatic .40 caliber handgun with one (1) round in the chamber and a loaded 10-round capacity magazine. During the search incident to arrest, officers found $434.92 and a small digital scale. The defendant pled guilty to Unlawful Possession of a Firearm (Prior Conviction) and Possession with Intent to Distribute a Controlled Substance (Cocaine) and received a 24-month concurrent prison sentence with 12 months of that sentence suspended. The defendant completed his supervised probation in that case on November 23, 2020.

However, nearly 15 months later, the defendant was arrested a second time for drug and firearm offenses on February 10, 2022. In D.C. Superior Court case 2022 CF2 000841, which is currently pending, the defendant is accused of unlawfully possessing a stolen firearm and narcotics. There, officers removed a loaded semi-automatic .40 caliber handgun from the defendant's groin area. The firearm had one (1) round in the chamber and a loaded 15-round capacity magazine. While searching the SUV that officers saw the defendant get out of moments before they arrested him, they found two small white rock-like substances, which field-tested

positive for Cocaine, a razor blade with white residue, and two black digital scales with white powder residue. On July 13, 2022, the defendant was indicted on: (1) Unlawful Possession of a Firearm (Prior Conviction); (2) Carrying a Pistol without a License (CPWL); (3) Possession of a Large Capacity Ammunition Feeding Device; (4) Possession of Unregistered Firearm; (5) Unlawful Possession of Ammunition; and (6) Possession of a Controlled Substance. While the defendant was on pre-trial release in that case, he was arrested for firearms and drug offenses in the instant case on September 21, 2023.

The defendant has been given numerous chances to remain in the community under supervision in his various criminal matters, but as this history makes clear, the Court should have no faith that he will refrain from possessing firearms in connection with drug distribution if released. The defendant's history indicates that he should be detained pending trial to ensure the safety of the community.

### D.   Danger to the Community

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, similarly weighs heavily in favor of detention. The defendant has previously served a lengthy period of incarceration (ten years) as a consequence for his criminal behavior, has previously served time for drug and firearms possession, and currently has a pending drug and firearms case in D.C. Superior Court. Yet, none of this has deterred him from illegally possessing drugs or a firearm yet again. Moreover, the fact that the defendant possessed the firearm along with large quantities of suspected Cocaine and Fentanyl and cash suggests that he carries the gun to protect himself, his drugs, and his money. This potentially deadly combination of drugs and guns is the reason Congress takes this kind of conduct so seriously. The defendant

once again, voluntarily put himself in a situation where he needed a gun that could kill someone in the community.

Moreover, the defendant's conduct is particularly egregious because the defendant was arrested with drugs packaged for individual sale *near multiple schools*. The defendant was arrested near 1919 I Street, NE, which according to Google Maps, is near five schools,[5] the closes of which – Phelps High School – is located less than 1,000 feet away.



*Figure 9 - Map of arrest location and multiple schools*

Under 21 U.S. Code § 860, any person who violates § 841(a)(1) by possessing drugs with intent to distribute them within 1,000 feet of an elementary, vocational, or secondary school is subject to twice the maximum punishment authorized by § 841(a)(1) and a one-year mandatory minimum sentence. The Court can and should take into account that the defendant was arrested less than 1,000 feet from a high school – *on a school night*.

---

[5] Phelps High School, Hugh M. Brown Junior High School, Charles Young Elementary School, Two Rivers Public Charter School, and Browne Education Campus are all schools near where the defendant was arrested. Langston Playground is also nearby.

Adding to the danger is the strong evidence that the defendant was using the firearm in furtherance of drug trafficking, although he is not charged under 924(c) to date. The defendant's car that contained the loaded pistol was located at 2017 I Street, NE, which according to Google Maps is approximately 600 feet from Phelps High School. As noted previously, the defendant's car was located approximately one minute away from where the defendant was arrested.



*Figure 10 - Map of car location and multiple schools*

The charged offense involves possession of a highly dangerous weapon, despite the fact that defendant is legally barred from such possession as a convicted felon, and despite being on pre-trial release in a Superior Court case in which the defendant is accused of various firearm violations. Possessing a fully loaded handgun while in the community – *especially* while dealing drugs near schools where small children learn and play – poses an inherent risk of danger not only to children, but to the public at large. *See United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-mj-181 (BAH),

2020 WL 5642288, at *2–3 (D.D.C. Sept. 21, 2020) (same); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly where, as here, a defendant's prior conviction shows a predilection for violence); *United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public.").

The defendant dealing drugs and possessing a loaded semi-automatic near a school while on pre-trial release for previous firearm related offenses, demonstrates his danger to the community. This factor, along with the other three factors, weighs in favor of the defendant's detention without bond pending trial.

### III.   Conclusion

The government respectfully requests that the Court issue an Order granting its motion that the defendant be held without bond pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:   /s/ *Jared English*
JARED ENGLISH
Assistant United States Attorney
D.C. Bar No. 1023926
United States Attorney's Office
601 D Street, N.W.
Washington, D.C.   20530
Telephone: 202-465-0089
Email: Jared.English@usdoj.gov

22